UNION TOWNSHIP OF DUNKLIN COUNTY et al. v. COTTON HILL TOWNSHIP OF DUNKLIN COUNTY et al., Appellants.

Division One, June 16, 1922.

1. **JURISDICTION:** Boundary Line Between Townships: Establishment. Under the statute (Secs. 13172 and 13173) the county court alone has power to establish the boundary line between townships, but the circuit court, in a controversy between two townships claiming different lines as the boundary between them, has jurisdiction to interpret and construe a prior order of the county court establishing the boundary and to determine what was in fact the line thus fixed.

2. **EXTRANEOUS EVIDENCE:** Order Fixing Boundary of Townships. Where there is uncertainty in the meaning of an order of the

county court establishing the boundaries of townships, extraneous facts are competent to aid the court in determining the intent and meaning of said order.

3. **ORDER FIXING BOUNDARY OF TOWNSHIPS: On Banks of Lake: Unnavigable Stream.** Where the order of the county court in fixing the boundaries of two adjoining townships simply said as to one of them that the line was fixed "on the west by the West Swamp" and as to the other "on the east by the West Swamp," said order, if the swamp was a lake with fixed banks or bound- aries, would have one meaning, but if the swamp was a water- course in which water accumulated at times and drained out later, the order would have a different meaning; and the extraneous evidence showing that West Swamp never was a lake or pond, but a place where water accumulated in flood time and later drained out and was discharged over a broad area, the law pertaining to fixed banks of a lake as a boundary has no application, but the meaning of the order was that the general run or thread of the swamp was fixed upon as the boundary line.

4. ————: ————: ————: **Decree: Unfortunate Wording.** The words of a decree of the circuit court declaring that the range line "is hereby established as the dividing line between said townships" are unfortunate, but are interpreted as meaning that the court found and adjudged, in accordance with the evidence, that the order of the county court fixed upon the thread of the swamp, which was practically upon the range line, as the boundary of the two townships.

5. ————: **Long Acquiescence.** Where private owners in cases where the true line is unknown fix upon a boundary line between their adjoining real estate, such agreement establishes the line and all subsequent owners are bound thereby, and long acquiescence in a dividing line is evidence of a prior agreement; and where the order of the county court fixing the boundary line between town- ships is ambiguous and leaves the line uncertain, said rules might properly be applied to their long understanding of the order; but in this case there is no such ambiguity, but the evidence shows that at the time the order was made, establishing a swamp or un- navigable stream as the boundary, the range line was substantial- ly the thread of the swamp, and that both townships and their in- habitants for thirty-five years recognized the thread of the swamp as the boundary line, and it is therefore held that a decree in- terpreting the order to have established the range line as the boundary was correct, and the case does not call for the invocation of said rules.

6. ——: **Survey: Ratification.** Where one of the townships by its board did not ratify a survey of the boundary line, the line so found is not binding on either.

7. ——: ——: **Expenditure for Bridges: Pleading: Estoppel: Decree.** An averment in the answer of the defendant township that, after surveyors had located the boundary line, it had spent large amounts of money in the construction of roads and bridges on territory, which by the decree is adjudged to the plaintiff township, and a complaint that no disposition is made of this matter in the decree, cannot be considered where the answer does not raise the question except by way of estoppel, and that is disposed of by the fact that plaintiff township at all times denied the surveyors' line and that what was done by defendant was done in the face of said denial.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*George Smith* for appellant.

(1) A court of equity has no authority to establish a boundary line where the evidence all shows it would be plainly different from either side of ''West Swamp'' or from the thread of the swamp. R. S. 1919, secs. 13172, 13173. Thereafter the court erred in establishing the line at a place other than where the evidence shows it to have been when the county court established it in 1872. The court can define a line, but under the law it cannot change the line, and since the surveyors found that only one line, that is, where West Swamp joins Crowley's Ridge, was the only place that a definite line could be established, the court erred in failing to establish it there. (2) On a natural lake or pond the riparian owner, as such, takes only to the natural shore of the lake or pond. State v. Milk, 11 Fed. 389; Noyes v. Collins, 92 Iowa, 566, 61 N. W. 250; Robinson v. White, 42 Me. 209; Clute v. Fisher, 65 Mich. 48; Diedrict v. Railroad, 42 Wis. 248. (3) Courts will not disturb parol agreements of boundaries, but will encourage such

settlements of disputed conflicting and doubtful boundaries as a means of settling spiteful and vexatious litigation. Turner v. Baker, 64 Mo. 218; Betts v. Brown, 3 Mo. App. 20; Kellum v. Smith, 65 Pa. St. 86; McArthur v. Henry, 35 Tex. 801; Crim v. Murphy, 110 Ill. 271; Orr v. Hodley, 36 N. H. 575; Watrous v. Morrison, 33 Fla. 261; Atchinson v. Pease, 96 Mo. 566; Daniels v. Hall, 22 La. Ann. 532. (4) In designating boundaries the word "by West Swamp" should mean along the external or western boundary of West Swamp. Peaslee v. Gee, 19 N. H. 273.

*Robert J. Smith* and *O. V. Seed* for respondent.

(1) The appellant nowhere in the trial of this case, nor in the motion for a new trial, attacked the jurisdiction of the trial court to determine the question involved in this case, and he does not attack it here. So we conclude that it is admitted that the court had jurisdiction of the case. Sierra County v. Nevada County, 99 Pac. 371. (2) The appellant complains that the court could not establish a line different from what the evidence showed it to have been established by the county court in 1872, but admits that the court could define a line. That is what the court did in this instance; the court properly held that the county court by such order meant the "thread" or "run" of West Swamp. Felder v. Bonnett, 2 McMul. (S. C.) 44; Benson v. Morrow, 61 Mo. 350; Whiteside v. Oasis Club, 187 S. W. 30; 4 R. C. L. p. 85, sec. 16, and p. 86, sec. 17; 38 Cyc. 602. (3) The court had abundant evidence upon which to base his finding that the thread or run of West Swamp was intended as the boundary line, and the range line between Range 9 and Range 10 was at or near that run, and had been so considered by the county court as the dividing line, and also so considered by the citizens of both townships for many years. (4) When the witnesses were before the chancellor, as in this instance, and he found the facts and decided the case upon the contradictory

testimony as here, the appellate court will be inclined to follow the findings, and especially so, if the evidence warrants the findings of the trial court, as it does in this case. Craddock v. Jackson, 223 S. W. 929; Dudley v. Waldrop, 183 S. W. 1098.

GRAVES, J.—Action in equity, seeking injunctive relief, the real purpose of which is to determine the boundary line between Union Township, and Cotton Hill Township, in Dunklin County, Missouri. The petition charges that Cotton Hill Township is asserting jurisdiction over, and attempting to enforce the collection of taxes upon lands and property within, Union Township, and an injunction was prayed, and allowed by the trial court. The decree of the trial court fairly finds the evidenciary (both record and oral) facts. Its findings are not especially challenged, except as to their sufficiency to sustain the decree. The findings of fact and decree *nisi* is as follows:

"DECREE OF COURT.

"On this 25th day of February, 1921, this cause having been heretofore submitted upon the pleadings and the proof adduced by the plaintiffs and the defendants, and the court, having duly considered the same, doth find that Union Township and Cotton Hill Township are municipal townships in Dunklin County, Missouri; that prior to the year 1872 said county had been divided into municipal townships, two of which were those named above, and that the records of the county having been destroyed by fire the county court of said county, on the 8th day of October, 1872, during the October term of said court, re-established of record the boundaries of said municipal townships, and as to the two townships named above entered of record the following order and judgment to-wit:

" 'Ordered by the court that Union Township be bounded as follows, to-wit: On the north by the county line, on the west by the St. Francis River, on the south

by Taylor's Slough, on the east by the West Swamp; and that Cotton Hill township shall be bounded as follows, to-wit:   On the north by the county line between Stoddard and Dunklin Counties, on the west by West Swamp, on the south by the township line between Township Twenty-one and Twenty-two, on the east by the county line between New Madrid and Dunklin Counties.'

"The court further finds that in the year 1872 and for many years thereafter, the territory described and designated as 'West Swamp' was a large body of wet and swamp lands extending from north to south, having in its lowest part during the rainy season water which flowed southward, and in the dry season little, if any, water therein; that it had no known banks, edges or margins, but varied in size and shape with the wet and dry seasons, the northern part thereof having Crowley's Ridge to the west; the court further finds that subsequently to the making of said order, the tax-books for the year 1872 and 1873 were made out for the county as a whole, and the lands were described therein and set out by townships, and that all of the lands west of the Range line between Ranges Nine and Ten were described as being in Union Township, and all lands east of said range line were described as being in Cotton Hill Township; that from the year 1873 until the year 1914 the tax-books did not describe the lands by townships, but during all those years the township line stated above was deemed and accepted by the taxpayers and the tax collectors of said county as the dividing line between said townships; that delinquent tax deputy collectors, when appointed for each of said townships, recognized said line as the division line between the two townships; the court further finds that during all of these years and up to the present time, with few exceptions, voters who lived along said range line upon the west voted in Union Township, and those who lived along said range line to the east thereof voted in Cotton Hill Township; that the same line was used as the dividing line in determining where residents should work the roads.  The court

further finds that about the year 1914 Dunklin County, by vote, adopted township organization; that in the year 1919, the County Court of Dunklin County, at the request of one or both of said townships, ordered its county surveyor to locate and establish, with the aid of a surveyor to be appointed by each of said townships, the boundary line between Union Township and Cotton Hill Township, and that said surveyors determined that said boundary line should be along the west edge or margin of said West Swamp, and did not attempt to locate, survey or mark out the east edge or margin of said swamp. The court further finds that thereafter the township board of Cotton Hill Township expended about three thousand dollars in building bridges over drainage ditches which had theretofore been constructed along and through said West Swamp from north to south, by means of which said lands had been entirely drained and reclaimed, said bridges being in part east of said range line and in part west of said range line. The court finds that Union Township, through its township board, did not accept said survey; that since the adoption of township organization, the exact dividing line between said townships has become a vital issue, because of the law giving to each township a certain part of the taxes collected in that township, and requiring of each township that it maintain its own roads and bridges. The court further finds that owners of land lying in said territory known as West Swamp have, since this dispute arose, failed to pay, in many instances, their taxes to the tax collector of either township; that some tax suits have been hitherto instituted by Cotton Hill Township against landowners upon property located west of said range line, and that other tax suits are being threatened by the same township against said landowners and taxpayers; the court finds that in 1872, when said order defining said boundaries was made by the county court, by the term 'West Swamp' used as the east boundary line of Union Township and the west boundary line of Cotton Hill Township, said court intended that Union

Township on its east should extend to the thread or run of said West Swamp, and that Cotton Hill Township should extend upon the west to the thread or run of said West Swamp; but that the officers, landowners and other citizens of the two townships, for convenience, adopted said range line between Range Nine and Ten for the division line between said townships, although, in truth and in fact, more of West Swamp lay to the east of said line than to the west thereof; that Union Township is not complaining because of said loss of territory, but is insisting upon the range line as the proper division point. The court further finds that the citizens and taxpayers in said disputed area which was formerly West Swamp, are threatened with vexatious litigation at the hands of officers of each of said townships. The court further finds that the defendant Dunklin County, Missouri, so long as township organization exists in said county, has no active interest in this lawsuit between the plaintiff township and the defendant township.

"Wherefore, the court doth order, adjudge and decree that the order of the county court first herein above set forth be, and the same is hereby held and construed as establishing the thread or run of the said West Swamp as the dividing line between said townships, parties hereto; that by the uses and acceptance of more than thirty years, the division line between said townships shall be the line between Range Nine and Ten, and said line is hereby established as the dividing line between said townships, extending from the township line between Townships Twenty-one and Twenty-two on the south to the county line between Dunklin County and Stoddard County on the north. It is further ordered, adjudged and decreed that the Township of Union shall not prosecute the collection of taxes upon land lying east of said Range Line, and that the Township of Cotton Hill, through its officers, shall not further prosecute litigation for the purpose of collecting taxes upon lands lying west of said township line.

"It is further ordered that the plaintiff, Union Township, recover of the defendant, Cotton Hill Township, its costs in this behalf expended."

Further details as to both pleadings and evidence will be noted in the course of the opinion, so far the same is necessary.

Appellants' assignments of error are four in number, and are as follows:

"(1)  The court erred in overruling defendant's demurrer at the close of plaintiff's case.

"(2)  The court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff.

"(3)  The court erred in refusing to rule that the line between Cotton Hill Township and Union Township should be the west boundary of West Swamp.

"(4)  The court erred in refusing to compel Union Township to pay back to Cotton Hill Township the money expended by it on the roads and bridges in the disputed territory."

I.  Turning to the brief under point one, it there appears that the real contention is that the circuit court (sitting in equity) has no power to establish a boundary line between municipal townships, but could only determine where such boundary line was in fact.  Under the statutes the power to fix township boundary lines is with the county courts.  [R. S. 1919, secs. 13172 and 13173.]  We do not understand that respondents deny this situation.  What respondents claim is that this is an action in equity (seeking injunctive relief), and that in the course of trying such a case (over which circuit courts have jurisdiction) such court has the power to determine where the boundary legally is, and determine its cause in equity upon such finding.  In determining where the boundary line in fact is, such court has the right to construe the order of the county court establishing the boundary, and if it be ambiguous in language, to determine its meaning.  This respondents say is all the trial court did.  Of

*Establishing Boundary Line.*

course a circuit court has no power to establish township boundary lines, but respondents do not so contend.

II.   Appellants contend that by the decree entered the circuit court fixed a boundary line.   There is a broad distinction between establishing and fixing a boundary line, and merely ascertaining a boundary theretofore established and fixed.   That the circuit court had power *Jurisdiction.* to ascertain the established or fixed boundary line (in this equity case) there can be no question.   That it had no right to establish a boundary line in the first instance should be as readily conceded.   The point especially pressed is that the circuit court, after having determined the meaning of the county court's order of 1872, and after having held that by such order the county court meant the run or thread of the swamp as the dividing line, such court then of its own motion established the line between Ranges Nine and Ten as the dividing or boundary line.   The decree uses the words "is hereby established as the dividing line" and from this language is built the castle presented by appellants upon this particular point.   Appellants further contend that the court was in error in construing the order of 1872 to mean the thread of the swamp. These we conceive to be the real contentions of the appellants, and these we discuss in following paragraphs.

III.   Where there is uncertainty as to the meaning of a law, or an order establishing a boundary line, the courts can from extraneous facts determine the legislative intent, when fixed by law, and the meaning of an order, when fixed by some other body authorized to fix the boundary lines.   [Sierra County v. Nevada County, 155 Cal. 1.]

The order of the county court in 1872, in fixing this boundary line, simply says, "on the west by the West Swamp" as to one township, and "on the east by the West Swamp" as to the other township.   Where that line was, in fact established under this order, became a

question of fact to be determined by the
court. This line, thus established, depended
in the first instance upon the character of
what is called "West Swamp." If West
Swamp was a body of water which pertained of the char-
acter of a lake or pond, with fixed banks or boundaries,
and no egress for its waters, and not that of an un-
navigable stream or body of water, then we would have
one question, but if this swamp was of a different char-
acter, then we have quite a separate and distinct ques-
tion. This order of 1872 cannot be construed without
knowing the character of West Swamp. If West Swamp
was a lake, the order might have one meaning, but if it
was a kind of watercourse by which water accumulated
at times, and drained out later, it would have a different
meaning. The finding of the court (fully justified by
the facts) does not indicate that West Swamp was a
lake, but on the other hand indicates that it was a place
where, in flood times, the water accumulated, and later
drained down, and was discharged over a broad area.
The discharge was outside of the disputed area. In no
sense, under the evidence in this case, can it be desig-
nated as a lake or pond. If not, then it must be an un-
navibable stream of some kind, and an entirely different
rule of law applies. If not a lake then the sundry cases
cited by appellant have no application, and need not be
further noted.

The facts show that this West Swamp is an ac-
cumulation of water from surrounding hills, and as the
hills recede to the east and west, the water spreads out
and disappears. We say east and west, but this may not
be exactly accurate, but sufficiently so for the point.
The facts fail to show that it was, or ever has been a
lake, and hence the rule of law applicable to such a situa-
tion has no application. On the other hand that rule of
law which says that the line must be fixed by the thread
or general run of the slough, swamp, or stream must
govern. The trial court took this view, and it is sup-

*Lake or Indefinite Swamp.*

ported by the authorities. In a South Carolina case what was known as "Dean's Swamp" was under consideration. [Felder v. Bonnett, 2 McMull, 44.] The court took the same view as did the trial court in this case. The situation there was much as here. That court adopted the rule that the thread or general run of the swamp fixed the boundary. That case and the rule therein announced was specifically approved by this court in Whiteside v. Oasis Club, 187 S. W. 27. We need not go further as to authorities. We especially approved the rule in the South Carolina case, supra, and that rule authorized the trial court to look to the general run or thread of the swamp for the boundary line. So far the trial court's judgment accords with the rule fixed by this court.

IV. The decree of the court is unfortunate in the use of the phrase "and said line (the range line) is hereby established as the dividing line between said townships." What the court really means is that it finds such line was so established by the common consent of both townships and the inhabitants thereof. The whole recitation of facts so indicates.

The recitation of facts is not quite as complete as it might have been. The evidence tends strongly to show that this thread of the swamp was practically upon the range line, and this no doubt was the reason for the action of the two townships and their officers and inhabitants. From 1872 up to 1917 there was no dispute upon this question. The conduct of the interested parties indicate that they understood the order of 1872 to mean the thread of the swamp as the line established, and that they further understood that the range line was practically the thread of the swamp.

The trial court could have well found from the evidence that this range line in 1872 was practically the thread of the swamp at that time. Such finding would

have been supported by the evidence, and no further find-
ing would have been necessary.

The trial court however was impressed with the
idea that an acquiescence in this range line as the boun-
dary line from 1872 to 1917, precluded either party to
this action from now contesting it. If we take the rule
applicable to private owners of land as the rule as be-
tween townships the trial court was right. Where pri-
vate owners agree upon a boundary line (in cases where
the true line is unknown and uncertain) such agreement
establishes the line, and all subsequent owners are bound
thereby. Long acquiescence as to the dividing line is
evidence of a prior agreement. [Atchison v. Pease, 96
Mo. 566; Betts v. Brown, 3 Mo. App. 20; Turner v.
Baker, 64 Mo. l. c. 240; Grim v. Murphy, 110 Ill. 271;
Orr v. Hadley, 36 N. H. 575; McArthur v. Henry, 35
Texas, 801; Kellum v. Smith, 65 Pa. St. 86; Watrous v.
Morrison, 33 Fla. 261.]

So if it be said that this order of 1872 was really
ambiguous, and left the dividing line uncertain, the con-
duct of the two townships for the long number of years,
would show not only their understanding of the order,
but likewise their agreement upon the boundary line.
Upon this last phase of the case we are not prepared to
say that the trial court was wrong.

The evidence in this case, however, is such that it
is quite clear that this range line was substantially the
thread of this swamp in 1872; that the parties recog-
nized the order to mean that the thread of the swamp
was the boundary line, and that this range line was in
fact the boundary line established by the order of the
county court in 1872. Taken as a whole the decree *nisi*
is well founded, and should be affirmed.

V. The answer pleads that there was a survey made
by the county surveyor and a surveyor from each of the
townships, and that the townships agreed to or ratified
the line found by these surveyors, which line was the

Ratification.    west side of this West Swamp. This answer avers that the township boards ratified this survey and line thus found. The evidence does not support this answer, and we need not go further. Union Township never ratified, through its township board, any such line.

There is also something said about Cotton Hill Township having expended some $3,000 for bridges and road construction work after this survey, which was upon territory now adjudged to Union Township, and no disposition as to this is made in the decree.

Construction. of Bridges.    Suffice it to say that the answer does not raise the question, except by way of estoppel, and this is answered by the fact that Union Township denied at all times this line, and that what was done was done in the face of this denial.

For the reasons previously stated the judgment should be and is affirmed. All concur, except *Woodson, P. J.,* absent.