Nolan CHAPMAN, Jr. and Larry Sherrow, Plaintiffs-Respondents,

v.

Bill HOYT et al., Defendants-Respondents,

and

John C. Danforth, Intervenor-Appellant.

No. 59565.

Supreme Court of Missouri, En Banc.

April 11, 1977.

Rehearing Denied May 10, 1977.

Walter Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for intervenor-appellant.

Robert B. Paden, Pros. Atty., Chillicothe, for respondents.

HENLEY, Judge.

This case presents the question of whether the provision of § 49.010, RSMo 1969 [1]

requiring that the division of a county into two county court districts be made "without dividing municipal townships" violates the constitutions of the United States and the State of Missouri in that it prevents division into districts "as near equal in population as practicable" and results in dilution of the weight of the vote of residents of one district contrary to their rights under the equal protection clause of the Fourteenth Amendment and Mo.Const. Art. I, § 2.

Livingston county, third class, has adopted the alternative form of county government provided for in Chapter 65 (§§ 65.010–65.620) known as the "township organization" form. It is divided into 13 townships and, for the purpose of electing members of the county court, it is also divided into two districts known as the eastern district and the western district. Its county court [2] is composed of three members: a presiding judge elected by the qualified voters of the county at large; and two associate judges, one elected by the qualified voters of each district. The county population, approximately 15,000, is located in the townships comprising the two districts, as follows:

### WESTERN DISTRICT

| | |
|---|---|
| Blue Mound | 431 |
| Cream Ridge | 667 |
| Green | 353 |
| Jackson | 472 |
| Monroe | 409 |
| Morresville | 408 |
| Sampsel | 261 |
| | 3,001 |

### EASTERN DISTRICT

| | |
|---|---|
| Chillicothe | 10,159 |
| Fairview | 426 |
| Grand River | 344 |
| Medicine | 185 |

1. References to sections of the statutes will be to this revision, unless otherwise indicated.

Section 49.010 is as follows:

"The county court shall be composed of three members, to be styled judges of the county court, and each county shall be districted by the county court thereof into two districts, of contiguous territory, as near equal in population as practicable, without dividing municipal townships."

2. An administrative body; not a court in a juridical sense.

| | |
|---|---|
| Rich Hill | 809 |
| Wheeling | 444 |
| | 12,367 |

The city of Chillicothe, the county seat, is located in Chillicothe township and both are in the approximate center of the county. As indicated, roughly two-thirds of the county population is in that township and more than nine-tenths of that is in the county seat.

Plaintiffs reside in and are qualified voters of the eastern district. In this action against the judges of the county court and the county clerk (defendants) plaintiffs allege, in substance, that they and others in the eastern district are deprived of their right to a vote for county court judge of substantially equal weight to the vote of every other resident of the county by reason of the prohibition of § 49.010 against dividing municipal townships in the process of dividing the county into two districts. The defendants, admitting the allegations of plaintiffs, join them in attacking the constitutionality of this section and, in this court, these parties join as respondents.

The Attorney General of Missouri intervened as a party under authority of Rule 87.04[3] and filed pleadings defending the constitutionality of § 49.010.

The trial court, having concluded as a matter of law it was impossible to divide the county into two districts of contiguous territory substantially equal in population "without dividing municipal townships," declared this portion of § 49.010 unconstitutional. The court then entered judgment that the county court divide the county into districts as required by § 49.010, and directed that this division be made without regard to township boundaries.

**3.** Reference is to Missouri Supreme Court rules. See also § 527.110.

**4.** Section 47.010 is as follows:

"Each county court may divide the county into convenient townships, and as occasion may require [1] erect new townships, [2] subdivide townships already established, [3] organize better township lines, and may, upon the petition in writing, of not less than twenty-five

There is no real issue in this case as to whether the population of the county is malapportioned between the two existing districts; intervenor-appellant tacitly concedes in his brief that it is.

Intervenor-appellant contends the trial court erred in reaching the constitutional question and declaring a portion of § 49.010 unconstitutional. He argues, and attempts to demonstrate, that it was not necessary to decide the constitutional question. He does this, first, by stating that the townships of counties organized under Chapter 65, known as the "township organization" form of county government, are not "municipal" townships within the meaning of § 49.010; that the only counties with "municipal" townships are those organized under § 47.-010;[4] therefore, he says, redistricting and reapportionment of Livingston county is not inhibited by the restriction of § 49.010 on dividing townships.

■ We do not agree that the townships of a county organized under Chapter 65 are not municipal townships. Both those established under § 47.010 and those which have elected to adopt the "township organization" form are municipal townships within the meaning of § 49.010, and are subject to its restrictions on dividing townships. In *State ex rel. Halferty v. Kansas City Power and Light Co.*, 346 Mo. 1069, 145 S.W.2d 116, 122[10] (1940) this court, referring to Chapter 86, RSMo 1929 (a predecessor of present Chapter 65), said: ". . . we think it too clear to admit of argument that when the Legislature used the term 'municipal townships' in the statutes above referred to it meant subdivisions of a county as that term is generally understood." See also: *Union Township of Dunklin County v.*

percent of the legally qualified voters of each township affected, as such vote was cast in the last preceding general election for the office receiving the greatest number of votes in the township or townships affected, [1] consolidate two or more existing townships into one township, or [2] otherwise reduce the number of townships, or [3] change the boundary lines thereof, as may be deemed advisable."

*Cotton Hill Township*, 294 Mo. 538, 243 S.W. 333, 334 (1922) in which the trial court's decree, quoted in full in the opinion, refers to these two townships in a county which adopted the "township organization" form of government in 1914 as being "municipal" townships then (1922) and before it adopted that form of county government.

 In attempting to demonstrate that Livingston county is not inhibited by the restrictions of § 49.010, intervenor-appellant recognizes that under § 65.530 the county court of a township organization county does not have the same broad authority to redistrict by altering township lines as does the court of a county (referred to by intervenor-appellant as a § 47.010 county) which has not adopted the township organization form. Section 65.530 gives the county court authority to alter the boundary lines of townships *only* upon petition of one-fourth of the voters, and ratification of the proposition thus submitted by two-thirds of the votes cast by the voters, whereas, in a § 47.010 county, the county court may "erect new * * *, subdivide * * *, [or] organize better township lines" without a vote of the people.

Having recognized this difference in the statutory authority of the county courts of counties which do and those which do not have the township organization form of government, intervenor-appellant suggests that a way to avoid the § 49.010 prohibition against dividing townships (and thereby avoid deciding the constitutional question) is for the county court to create § 47.010 townships on top of or in addition to the existing townships. By doing so, he says, the county court may then, on its own motion and without a vote of the people, "erect new townships * * * [with] better township lines" which will lend themselves to a division of the county into two county court districts of substantially equal population without violating § 49.010.

The suggestion is ingenious but hardly permissible. It ignores the fact that the form of government of Livingston county is an alternative form adopted by the electors thereof (§ 65.020) who thereby chose to say through § 65.530 that only they by their vote could thereafter alter the boundaries of townships in their county. Furthermore, the statutes relative to county and township government generally (Chapters 46 through 67), and those applicable to third and fourth class counties in particular, do not contemplate or permit the existence of two types of township government at the same time, or townships of one size and shape for one purpose superimposed upon another of a different size and shape for another purpose. For the courts to authorize what intervenor-appellant suggests would be to legislate. We decline the invitation.

 Insofar as § 49.010 prevents redistricting of the county into two county court districts, of contiguous territory, as near equal in population as practicable, it violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.

The judgment is affirmed.

All concur.